# Brooks et al. v. Cook et al.

## Action to recover Royalty upon a Lease of Ore Lands.

1. Action to recover royalty from lessee; defendant not liable for royalty where leased property does not contain ore; pleading and evidence.—Where the owners of land execute a lease granting to the lessees the right and privilege to mine all the iron ore in and under said designated land for a given period, for which right the plaintiffs were to be compensated by a royalty, and a minimum amount of ore to be mined is stipulated, if, in said contract of lease the payment of royalty be based upon the assumption by the parties that iron ore existed under the lands, and it is subsequently ascertained that no iron ore exists in the land, the lessees cannot be held liable for the royalty stipulated; and in an action by the lessors to recover a minimum royalty provided for, it is competent for the defendant to set up as a defense the non-existence of the ore and to introduce evidence to show that fact.

2. Same; authority of agent acting for his principals to lease ore lands in consideration of royalty.—A contract to lease ore lands having been made by agent of the plaintiffs in such a way as not to bind his principals, the plaintiffs, but only to bind himself personally, may, however, be good as to the principals, the plaintiffs, if they choose to ratify same and make it binding on the other party.

3. Evidence.—Evidence tending to explain the quality of the ore on the leased premises, inadmissible, since the contract sued on made no requirement as to the quality of the ore.

4. Same; execution of lease.—A contract granting the right to take ore out of the land, whether the consideration be called "royalty" or by any other name, is a conveyance of a part of the real estate and must be executed with the formalities required for the conveyance of real estate.

5. Same.—One who is a party to a deed or a beneficiary thereunto is not a competent attesting witness thereto.

APPEAL from the City Court of Talladega.

Tried before the Hon. G. K. MILLER.

This was an action brought by the appellees against the appellants, to recover $75.00, the amount of five

months royalty alleged to be due upon a lease executed by the plaintiffs to the defendants by which lease the plaintiffs granted to the defendants the rights and privileges to mine all iron ore in and under said designated lands. The defendants pleaded the general issue, and also interposed by special pleas the defense that said contract of lease was based upon the supposition indulged in by the parties thereto, that the lands described in said lease contained iron ore in merchantable quantities; but that as a matter of fact after diligent and faithful digging and search, it was ascertained that said lands did not contain iron ore in merchantable quantities, and was entirely valueless as far as iron ore being contained therein was concerned, and that, therefore, the defendant did not mine said ore. The same defense was interposed by other special pleas with the additional averments that the said designated lands had been surrendered up by the defendants to the plaintiffs after they were found to contain no iron ore in merchantable quantities, and said lands were accepted by the plaintiffs and hence they were not due the plaintiffs the royalty stipulated in the contract or lease. The plaintiffs demurred to the special pleas setting up this defense upon the ground that said pleas presented no defense to the action sued on.

These demurrers were overruled as to the special pleas setting up the surrender of the premises and sustained as to the rest, and to each of these rulings the defendants separately excepted. The plaintiff offered in evidence the lease under which they claim the amount sued for, which lease is in words and figures as follows:

"State of Alabama, Talladega County. Whereas, Thos. L. Cook, Mary E. Cook, wife of R. E. Cook, and Mrs. Maria L. Gorman are the owners of a certain tract of land lying and being in Talladega county, Alabama, and more particularly described as follows, to-wit: The south half of south-east quarter, section nine, township nineteen, range four, supposed to contain iron ore. And whereas Richard E. Cook is duly authorized and empowered by them to lease the mineral right in said lands under certain conditions as stipulated; and whereas J. B. Brooks, J. B. Stagg and W. C. Stagg, a firm acting and

doing business under the firm name of Brooks-Stagg & Co., do enter into the following agreement, to-wit, the said mineral rights and privileges are only to be let to parties of the second part." "1st. R. E. Cook, party of the first part, agrees and binds himself to lease to the said party of the second part as follows, to-wit: The mineral rights and privileges on said lands from this date for a term of ten (10) years in consideration of $1.00 to him in hand paid, the receipt whereof is acknowledged, and the further consideration of a faithful compliance by the party of the second part, with the terms and conditions hereinafter mentioned, the party of the second part agrees to mine and pay for at a royalty of 15 cents per standard ton of not less than 100 tons per month during the continuance of this contract, on the 20th day of each month for all ore mined the previous month (except for the first month). A failure to comply with the foregoing agreement to pay at the rate of 100 tons per month will render this lease void and of no effect, so far as the parties of the second part are concerned." "The party of the first part for his principals, reserves the rights to take possession of the mine and ore mined, either on the bank, the railroad, the furnace, and sell the same either by private sale or otherwise, and out of the proceeds pay all sums due his principals; and should anything remain over after paying all legitimate cost and expense of such sale, and amounts due for royalty to his principals, pay over to the party of the second part the remainder, and may take possession of the mines, with all tools and fixtures. It is agreed and understood that no unnecessary damage is to be done to the agriculture interest on said lands, and that parties farming said lands will not be unnecessarily interfered with by party of the second part. It is agreed that the railroad weights shall govern in the settlement of the royalty at all times when practical, and that the party of the first part shall have at all times free access to the mines to see after the business for his principals and shall be furnished by the party of the second part, weekly statements of number of cars shipped, with the initials of number of cars and to what furnace consigned. The

party of the first part agrees to furnish rights-of-way to and from the mines to the railroad on a route to be agreed upon by the parties of this contract for all ore which the said Cook has or may acquire an interest in, and the party of the second part agrees that they will not ship or attempt to ship over said right-of-way any other ore save that on which the said Cook may agree now or hereafter agree to. We also agree to execute to Cook & Sawyer a note for eighty dollars ($80) for the rent of what is known as the undivided forty, they reserving water privileges and the right to and from the spring, said note payable the 1st day of December, 1900, and is referred to as a part of this contract; and should the parties of this contract agree to extend the time of renting, then, in the event the party of the second part are to execute their note annually on each 1st of December to cover the rent of the next year's ore, any failure to comply with this contract will render the note due and payable at the time of the forfeiture of this contract, to all of which we agree and bind ourselves this 18th day of January, 1900." This lease was signed by "R. E. Cook, agent," and the defendants individually, and witnessed by T. L. Cook and J. J. Sawyer.

It was admitted that R. E. Cook signed said contract in his own name and that he had no written authority from his principals, Thos. L. Cook, Mary E. Cook and Mrs. Maria L. Gorman, but that he had verbal authority to do so. It was further admitted by the plaintiffs that T. L. Cook, a witness to the lease, was one of the plaintiffs, and that J. J. Sawyer, the other witness, was the same Sawyer mentioned in the lease as a member of the ffrm of Cook & Sawyer. Defendants objected to the introduction of the lease in evidence on two grounds, first that R. E. Cook had no authority as required by law to make such a contract. Second, that the contract was not properly executed, not being witnessed by disinterested parties. To the court allowing said contract to be introduced in evidence, the defendants duly excepted.

There were verdict and judgment for the plaintiffs, fixing the recovery at $15.00. The defendants appeal

[Brooks *et al.* v. Cook *et al.*]

and assign as error the several rulings of the trial court
to which exceptions were reserved.

DRYER & WEBB, for appellants.—Sale of land or inter-
est in land by agent without written authority, is in-
valid and of no effect.—Code 1896, § 982; *Swann & Bil-
lups v. Miller*, 82 Ala. 530; *Stanfield v. Swann*, 78 Ala.
88; *Franklin v. Pollard Mill Co.*, 88 Ala. 318.

A conveyance to pass real estate must be attested by
at least one witness.—*Hendon v. White*, 52 Ala. 603;
*Charlie v. Charlie*, 87 Ala. 542.

A lease of minerals in lands is a conveyance of part
of the realty.—*Ft. Nat. Bank of Bham. v. The E. E. L.
Co.*, 97 Ala. 465; *Thompson v. U. S. Coal Co.*, 34 So. Rep.
31.

Grantee in a conveyance, incompetent witness.—*Cole-
man v. State*, 79 Ala. 49; *Calera Land Co. v. Brinker-
hoff*, 87 Ala. 42.

KNOX, DIXON & BURR, *contra.*—Said lease being sign-
ed by the party alleged to be charged, estops him from
setting up the invalidity of the lease because it was not
signed by the other party.—*Oliver v. Ala. Gold Insur.
Co.*, 82 Ala. 417; *Heflin v. Milton*, 69 Ala. 358; *Lauger-
felt v. McGee*, 100 Ala. 432.

"A royalty reserved on the amount of ore taken from
the land is rent."—18 Amer. & Eng. Ency. of Law, (2d
ed.) 261; 20 Amr. & Eng. Ency. of Law (2d ed.) p. 782,
par. 4; *Regina v. Westbrook*, 59 Eng. Common Law Rep.
202.

The quality of the ore is not an issue where it is not
mentioned in the contract.—*Watson v. Kirby & Sons*,
112 Ala. 436.

SIMPSON, J.—This was an action brought by the
appellees against appellants, to recover $75.00 claimed
to be due, under a contract which is set out.

This case was heretofore before this court, and the
court then construed the contract in question to be "a
grant to the defendant of the right and privilege to mine
all iron ore in and under the land designated." The

court further said: "We have but to call attention to the recitals of the lease to see that the payment of royalty was based upon the assumption of the parties that ore existed under the land. The grant was of ore in place, and, if the subject matter of the contract failed, the price is not payable." The court further says: "After all, the lease was nothing more nor less than a sale by them of iron ore" which both parties supposed to exist, and, if the evidence shows that said ore did not exist, then "the obligation of the lessees to mine    *    * was at an end, as was likewise their obligation to pay royalty."—*Brooks, et al. v. Cook, et al.,* So. Rep. 960; 135 Ala. 219.

The appellant raises a question which does not seem to have been before the court, when this case was passed upon, to-wit, that this contract having been originally signed by R. E. Cook, agent, in such a way as not to bind his principal, but only to bind himself personally, there was a lack of mutuality as between these plaintiffs and defendants, and that plaintiffs could not, by bringing suit on the contract, ratify it and make it binding on the other party.

Upon the general principle, this court has held that, when an agent makes a contract for the benefit of his principal, even though the principal be not disclosed, the principal may sue on it in his own name.—*Bell v. Reynolds & Sec,* 78 Ala. 511; *McFadden & Bro. v. Henderson,* 128 Ala. 221, 229; *City of Huntsville v. Huntsville Gas Light Co.,* 70 Ala. 191.

While there is some conflict in the decisions of other states as to whether the principal, who was not originally bound, can, by ratifying the contract make it binding on the other party, we follow the weight of authority and the leadings of our own State court as above indicated in holding, that although this contract as originally executed might have bound only the agent, and not the principals, yet the principals had the right to ratify it and bring suit on it.

As stated in some of the authorities, the liability of the agent, upon the contract, as originally signed, forms a sufficient consideration to the other party, and he is

not injured by allowing the principal to come in and ratify and claim the benefits of the contract.—See note to *Atlee v. Bartholomew,* 5 Am. St. Rep. 109.

The statute of frauds does not prevent the operation of this principle, in the present case, because our statute requires only that the writing be signed "by the party to be charged."—*Lagerfelt v. McKie,* 100 Ala. 430.

As the contract makes no requirements as to the quality of the ore to be taken, the exclusion of evidence on that point was proper.—*Watson v. Kirby & Sons,* 112 Ala. 436.

The defendant objected to the introduction of the contract in evidence on the ground that the attesting witnesses, Sawyer and Cook, were beneficiaries under the contract, it being admitted that Sawyer was a member of the firm of Cook & Sawyer, provided for in said contract, and Cook is one of the parties interested. We think this objection well taken, and the paper should have been excluded.

Rent is the consideration paid for the use of the land.

Whether you denominate it a lease or by any other name, when a man acquires the right to take ore out of the land, he takes away a part of the substance of the real estate itself, and whether the consideration be called "royalty," or by any other name, it is paid for the purchase of the substance which is taken away.

Consequently, such a contract is a conveyance of a part of the real estate, and must be executed with the formalities required for conveyances of real estate.—*Milliken v. Faulk,* 111 Ala. 658.

In a case before the House of Lords in England, which was a mineral lease for twenty-one years, Lord Cairns said: "Although we speak of a mineral lease, or a lease of mines, the contract is not, in reality, a lease at all in the sense in which we speak of an agricultural lease. There is no fruit; that is to say, there is no increase, there is no sowing or reaping in the ordinary sense of the term, there are no periodical harvests. What we call a mineral lease is really, when properly considered, a sale out and out of a portion of land. It is liberty given to a particular individual, for a specific length of

time, to go into and under the land, and to get certain things there, if he can find them, and to take them away, . just as if he had bought so much of the soil."—Scotch & D. Appeals, L. R.. pp. 273, 283-4.

The great weight of authority, as well as the logic of the situation so fully bear out this principle, that we consider it fully settled that minerals in the earth are a part of the real estate, and that any instrument by which they are conveyed must be executed in accordance with the law in regard to conveyances of land.—2 Lindley on Mines, § 812, 859b, 861 ; Barringer & Adams on the Law of Mines and Mining, pp. 35, 36 ; *Caldwell v. Fulton,* 31 Penn. St. Rep. 475, (72 Am. Dec. 760).

One who is a party to a deed or a beneficiary thereunder is not a competent attesting witness thereto.—*Coleman v. The State,* 79 Ala. 49.

As this proposition is fatal to the case, it is unnecessary to notice further the assignments of error.

The judgment of the court is reversed and the cause remanded.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.

