CINCINNATI & C. TRACTION CO. et al. v. AMERICAN BRIDGE CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. February 4, 1913.)

Nos. 2,246, 2,308.

1. DAMAGES (§ 122*)—BREACH OF CONTRACT—BRIDGE CONSTRUCTION—DELAY.

Where unexcused delay in completing a contract for the construction of a railroad bridge delayed the beginning of operation of a portion of the line, the additional gross operating receipts after the bridge was finished and cars were operated over the succeeding section, as compared with the gross receipts during the preceding like period of partial operation, formed no proper measure of damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 309–319; Dec. Dig. § 122.*]

2. EVIDENCE (§ 534*)—EXPERT TESTIMONY—DAMAGES—CONSTRUCTION CONTRACT—DELAY.

On the issue of loss sustained by delay in constructing a railroad bridge, expert evidence as to the value to the railroad company of the lost use of the bridge during the delay, which was nothing more than an estimate of additional gross earnings which the company would probably have received, and which did not undertake to estimate additional operating expenses, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2342; Dec. Dig. § 534.*]

3. DAMAGES (§ 68*)—CONTRACT—BRIDGE CONSTRUCTION—DELAY—INTEREST.

Where a railroad company was wholly deprived of the use of its property along a section of its line by the delay of a bridge company in completing a bridge, the railroad company, in the absence of evidence indicating a better measure of damages, would be permitted to recover interest at the legal rate on the cost of the part of the road which it could not use for the period of the delay chargeable to the bridge company.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 141–143; Dec. Dig. § 68.*]

4. EQUITY (§ 41*)—RETENTION OF JURISDICTION—LEGAL RELIEF.

Where, at the time suit was brought by a railroad bridge contractor to enforce a lien for the contract price of the bridge under an Ohio statute, it had not been decided that the act was unconstitutional in so far as it related to a claim of lien by a contractor against the owner, the bill would not be dismissed, on the statute subsequently being declared unconstitutional; but equity would retain jurisdiction and enter a money judgment, it not appearing but that the bill was originally filed in good faith, and not as a subterfuge to give jurisdiction.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 116–118; Dec. Dig. § 41.*]

Appeal and Cross-Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio; J. E. Sater, Judge.

Suit by the American Bridge Company of New York against the Cincinnati & Columbus Traction Company and others. Decree for plaintiff for less. than the relief demanded, and both parties appeal. Modified and affirmed, on appeal of complainant, on condition, and defendants' appeal dismissed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. B. Matthews, of Cincinnati, Ohio, for appellants.

J. S. Graydon, Lawrence Maxwell, and Joseph L. Lackner, all of Cincinnati, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and EVANS, District Judge.

PER CURIAM.   The Bridge Company sought to enforce a lien for the contract price of a bridge erected by it at Milford, in connection with the Traction Company's construction of its line from Hillsboro, through Milford, to Norwood.   The Traction Company claimed recoupment for delay.   The trial court found that there was a delay of 60 days more than could be excused; that the Traction Company was not thereby delayed in opening and operating its road from Hillsboro to Milford, but suffered damage in such operation because it could not run through to Norwood; and that the opening and use of the track from Milford to Norwood were for the 60-day period wholly prevented.

[1]  We adopt these findings, and we agree with the trial court that the additional gross operating receipts after the bridge was finished, and cars ran through to Norwood, as compared with the gross receipts during the preceding period of partial operation, formed no proper measure of damages.

[2]  We also agree that the expert evidence by which the Traction Company endeavored to prove the value to it of the lost use of the bridge turned out to be wholly incompetent.   The witnesses were really only estimating additional gross receipts, and did not undertake to estimate additional operating expenses.

[3]  However, such failure to show the value of this use does not leave the case entirely without measure of damages.   The Traction Company proved the cost of its road, and claimed interest thereon during the period of delay.   As to the power house and the Hillsboro-Milford section, which were in use, there is no room to allow interest.   The Traction Company was not wholly deprived of the use of this property, but only partly so deprived, and the extent of this deprivation cannot be computed.   As to the Milford-Norwood section, the Bridge Company's delay did have the effect of wholly withholding from the Traction Company all opportunity to use this property—i. e., all opportunity to earn anything on its capital there invested.

Under such circumstances, for want of a better measure, and lacking proof indicating that interest would not have been earned, the Traction Company is entitled to interest at the legal rate on the cost of this part of the road for the period of delay chargeable to the Bridge Company.   American Bridge Co. v. Camden, etc., Co., 135 Fed. 323, 68 C. C. A. 131.

From the present record this interest cannot be precisely stated. Ordinarily, we would remand for an accounting, and in case of such remand the Traction Company should have a chance to perfect its proof, if it can, regarding the value of the use of the bridge; but this litigation should not be longer continued, and to that end

we have endeavored to approximate the proper interest allowance. Taking into account the claims that the road west of Milford cost less than the average sum per mile, that the Traction Company's delay in completing some parts and in ballasting contributed to the final delay, and that the interest on part of the cost did not begin until the latter part of the period, we conclude that an allowance of $2,000 is the maximum supported by this record.

The Traction Company being at fault for leaving its proofs unexact, the Bridge Company may avoid a remand by filing in this court its consent to an abatement of $2,000, and interest at 6 per cent. from April 7, 1911, the date of the judgment below.

[4] There is another question: In its opinion the trial court held that the Ohio lien law was unconstitutional, following Shaw v. Cleveland, etc., Co. (C. C. A. 6) 173 Fed. 746, 97 C. C. C. 520, and proceeded to direct a money judgment for the amount due. The Traction Company then moved to dismiss, on the ground that the remedy at law was adequate, and that a court of equity could not render a mere money judgment. It now relies on this position. The Bridge Company has taken a cross-appeal, insisting upon its right to a lien.

The Traction Company had not demurred, but had filed its answer and cross-bill, from which it appeared that the real controversy involved much of the character of an accounting. Long before this litigation the Supreme Court of Ohio had held unconstitutional the then existing lien law, upon the same reasoning which led to a similar holding regarding the present law in Shaw v. Cleveland, etc., Co., supra; but thereafter the Legislature had passed the present law, and when the Bridge Company filed its bill (in 1906) there had been no decision on this law. Further, both the earlier Ohio case and the Shaw-Cleveland Case involved a lien claimed by a subcontractor or materialman, and the lien claimed was held inconsistent with the right of free contract between owner and contractor. The present claim of lien is by contractor against owner, and the precise question has not been decided. Under these circumstances, the court had jurisdiction to enter a money judgment for the amount due, both because the lack of power was not so clear as to excuse not raising the question at the first opportunity (Toledo Computing Scale Co. v. Computing Scale Co., 142 Fed. 919, 923, 74 C. C. A. 89, and cases cited), and because there is no reason to doubt that when the bill was filed the equitable right to enforce a lien was claimed in good faith, and not as a subterfuge to give jurisdiction (Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753; Mich. Cent. R. R. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. ——, decided by Supreme Court of the United States, Jan. 20, 1913, at first paragraph of opinion).

The Traction Company having given a supersedeas bond, we understand counsel for the Bridge Company to say that they do not insist upon their lien, so we think it unnecessary to pass upon the question raised by the cross-appeal. If we are wrong in this, further consideration will be given upon counsel's request.

In the original case, if the Bridge Company files the remittitur above indicated, the decree below will be accordingly modified, and, as modified, affirmed. In default of filing such remittitur within 30 days from the filing of this opinion, the decree below will be reversed. In either event, the Traction Company will recover the costs of this court. In the cross-appeal, the same will be dismissed, without costs to either party. No costs will be awarded for or against the Trust Company, mortgagee.